IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| JAMES LEWIS BRYANT, JR., ) | 1:15CR99-1 |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Suppress [Doc. # 15] filed by Defendant James Lewis Bryant, Jr. ("Defendant"). Defendant is under indictment for one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On April 24, 2015, Defendant moved to suppress any and all evidence obtained as a result of the search of the Defendant's bag, on September 4, 2014. The Court held a hearing on the Motion to Suppress on May 4, 2015. At the conclusion of the hearing, the Court informed the parties that an Order would be forthcoming concerning its decision as to Defendant's Motion to Suppress. For the reasons discussed herein, the Court will deny Defendant's Motion to Suppress.

I.  BACKGROUND

On March 30, 2015, a grand jury returned the one-count Indictment against Defendant, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant seeks to suppress the firearm at issue in the Indictment,

that being a Smith & Wesson .357 Magnum caliber handgun. This gun was recovered by the Winston-Salem, North Carolina Police Department on September 4, 2014, from a bag Defendant was carrying.

On September 4, 2014, Officers D.W. Walsh and G.P. Martin of the Winston-Salem Police Department responded to Wings and Spirits Sports bar based on an anonymous tip. The caller who provided the tip had stated that a man wearing black clothes and carrying a brown bag was in possession of a concealed handgun and that the man was a convicted felon. The caller identified the man, later confirmed to be Defendant, by name and date of birth. Prior to responding, Officer Walsh conducted research on the man identified using his office's computer system. By conducting such research, Officer Walsh was able to locate a prior mug shot of the suspect, and was able to confirm that the suspect was a convicted felon. Upon arriving at the bar, Officer Walsh identified the man described by the caller on the sidewalk outside of the bar. At that time, Officer Walsh made casual conversation with those around Defendant while waiting for backup and observing Defendant's demeanor. Officer Walsh stated that he felt Defendant was acting nervous during this time. At all times during Officer Walsh's encounter with Defendant, the Officer's body camera was recording. Upon viewing the footage, it is apparent that Defendant was acting nervous, and attempting to avoid interaction and eye contact with Officer Walsh.

Once Officer Walsh's backup arrived, Officer Walsh told Defendant that the Police Department had received a call accusing Defendant of carrying a concealed firearm. Defendant acknowledged that, as a convicted felon, he was not to be in possession of a firearm and denied

2

having a firearm in his possession. Officer Walsh then asked Defendant to open his bag to show the Officers that he, in fact, did not have a firearm. In response, Defendant took the bag off his back and placed it next to him, which caused his back to be turned to Officer Walsh. Defendant started to open the bag, and his hands appear to have been slightly inside the bag when Officer Walsh ordered the Defendant to take his hands out of the bag. Officer Walsh told Defendant that he would open the bag for him. In response to the order, Defendant took his hands from the bag and slightly raised them in compliance. Officer Walsh then opened the bag and shined a flashlight inside the bag revealing a black object. Defendant stated that there were only papers and a black notebook inside the bag. Officer Walsh then picked up the bag and felt that there was a heavy object in the bag. At that time, Officer Walsh removed the black object from the bag. The black object was a soft zippered case with handles. The object inside the case was heavy and was not flat. Officer Walsh opened the zippered case and located the gun at issue.

Defendant has now filed a Motion to Suppress, seeking the suppression of all evidence obtained from the search of the bag. In support of his Motion, Defendant makes two arguments. First, Defendant argues that the search was not supported by reasonable suspicion, because the anonymous call without more was not sufficient to establish reasonable suspicion.[1] Second, Defendant argues that if the Government is asserting that Defendant consented to the search, Defendant did not consent, but instead only surrendered to Officer Walsh's command.

---

[1] Defendant refers to the Officers lacking probable cause in his first argument, but the case law Defendant cites in support concerns reasonable suspicion. Accordingly, the Court will treat Defendant's first argument as one questioning the existence of reasonable suspicion.

The Government asserts that not only did Officer Walsh obtain consent to search Defendant's bag, but Officer Walsh also had the requisite reasonable suspicion to conduct the initial frisk of the bag, which provided the probable cause for the eventual search of the zippered case inside of the bag.

II. DISCUSSION

The Defendant argues that the search conducted on September 4, 2014, violated his rights under two alternative theories. First, he states that the search was not supported by reasonable suspicion. Second, Defendant argues that he did not consent to the search, and any actions that could be conceived of as consent were only taken in relation to Officer Walsh's command. In the Response, the Government argues that Officer Walsh both obtained consent for the search and had reasonable suspicion to conduct the initial frisk, which developed into probable cause to conduct the ultimate search. Accordingly, both arguments will be discussed in turn.

    A.    Consent

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (internal quotation and citation omitted). A search conducted pursuant to valid consent is one such well-recognized exception

4

to the Fourth Amendment's general warrant requirement. Id.; United States v. Boone, 245 F.3d 352, 361 (4th Cir. 2001). If consent is challenged, the district court must determine, based upon the "totality of the circumstances," whether consent was knowing and voluntary, which the government must prove by a preponderance of the evidence. See United States v. Mendenhall, 446 U.S. 544, 557, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007).

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227. In this regard, to determine whether consent was voluntary or the product of police coercion, a district court should determine whether, based on the totality of the circumstances, a person's will was overborne by the actions of law enforcement. Id. at 226–27. Factors that can be taken into account include the accused's characteristics, "such as such as age, maturity, education, intelligence, and experience[.]" United States v. Boone, 245 F.3d 352, 361–62 (4th Cir. 2001). Even if consent was given in relation to an illegal Terry stop, such consent is not automatically considered involuntary, so long as "the totality of the circumstances confirms that the consent was not coerced." Id. at 363.

Consent, however, cannot be based on mere acquiescence to apparent lawful authority. See Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968) (holding that an individual did not consent to search of house where "consent" had been given only after official had asserted that he possessed a search warrant); see also United States v. Robertson, 736 F.3d 677, 680–81 (4th Cir. 2013) (finding that while an officer asked for consent,

5

the officer's actions were more akin to an order when taking the circumstances into account and, thus, the defendant's consent was not voluntary); see also, United States v. Smith, 30 F.3d 568, 571 (4th Cir. 1994) (rejecting defendant's argument that consent was motivated by fear of police where suspect was not under arrest, no officer drew his weapon, and no officer threatened or touched the suspect). Consent can, however, be "inferred from actions as well as words." United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003) (citations omitted). For example, the Fourth Circuit has found valid consent in a situation wherein a defendant raised his arms in response to an officer asking for permission to pat down the defendant. United States v. Wilson, 895 F.2d 168, 170 (4th Cir. 1990).

Defendant argues that this situation was not like that of Wilson, but instead, was more comparable to that which occurred in Robertson. In Robertson, police responded to a call that three black males in white t-shirts were chasing an individual carrying a firearm. 736 F.3d at 679. When the officer at issue responded to the call, he noticed a group of individuals at a nearby bus stop who matched the description of the suspects. Id. When the officer approached the defendant, the defendant was sitting in the bus stop, with his back to the wall. Id. Other officers were engaging with the other suspects at that time. Id. After approaching the defendant, the officer asked the defendant if he had anything illegal on him, to which the defendant did not respond. Id. The officer then waved the defendant to come forward and asked the defendant to consent to a search. Id. In response, the defendant stood up, walked toward the officer, turned around, and raised his hands. Id. During the search the officer recovered the firearm at issue. Id. The Fourth Circuit found that the defendant's behavior in

6

walking towards the officer, turning around, and raising his hands, was not a "voluntary invitation to be searched." Id. at 681. Instead, "it was a begrudging surrender to [the officer's] order." Id. Factors that the court took into account were the officer's initial accusatory question, the fact that defendant was not informed that he had the right to refuse the search, the police dominated atmosphere, and the fact that it appeared the defendant could either submit to the search peacefully or resist violently. Id. at 680.

At first glance, the instant case differs from the situation in Robertson because initially, the Defendant here voluntarily cooperated with the Officer's non-coercive request to see in the bag. This difference, however, does not ultimately change Defendant's lack of consent to conduct the actual search of the bag. Defendant merely consented to opening the bag so as to allow the Officer to see inside of the bag, but not to search the contents of the bag. After the Officer became uncomfortable with Defendant opening the bag, the Officer did not thereafter, ask for consent to search the bag. Instead, Officer Walsh ordered Defendant to remove his hands from the bag and Defendant complied by raising his hands. Such actions do not amount to a non-verbal voluntary consent, but rather they constitute a sign that Defendant was acquiescing to authority, similar to the defendant in Robertson. Accordingly, the Court declines to find that Defendant consented in any manner to the Officer's search of his bag.

B.  Reasonable Suspicion

As stated above, searches conducted without a warrant issued upon probable cause are per se unreasonable. Schneckloth, 412 U.S. at 219. An exception to the warrant requirement exists, however, "when a police officer, during a voluntary encounter or otherwise, 'observes

7

unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[.]' " United States v. Black, 525 F.3d 359, 364 (4th Cir. 2008) (quoting Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). At that time, "the officer may temporarily seize and detain a citizen." Id. Such a temporary seizure is commonly known as a Terry stop or stop and frisk. See Terry, 392 U.S. at 30. In conjunction with the brief seizure of the person an officer may conduct "a limited search for weapons if the officer reasonably suspects that the individual is armed and presently dangerous." United States v. Place, 462 U.S. 696, 715, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). In assessing whether a temporary stop or seizure is justified by reasonable suspicion, the "totality of the circumstances" must be considered to determine "whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Mayo, 361 F.3d 802, 805 (4th Cir. 2004) (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)).

As an alternative theory, Defendant asserts that Officer Walsh lacked reasonable suspicion to stop Defendant because the stop occurred based solely on an anonymous tip. It is true that reasonable suspicion cannot be solely based on an anonymous tip that lacks sufficient indicia of reliability. Florida v. J.L., 529 U.S. 266, 274, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). In J.L., the police had received an anonymous tip that a young black male at a particular bus stop, wearing a plaid shirt, was carrying a gun. Id. at 268. Upon arriving at the bus stop, the officers saw three black males, one wearing a plaid shirt. Id. The officers did not see the firearm, and the defendant made no threatening or unusual movements. Id. As the officers approached the defendant, they told him to put his hands up on the bus stop and frisked him.

Id. During the frisk, the officers located the gun. Id. The Supreme Court stated that this anonymous tip lacked the indicia of reliability needed to justify the stop and frisk. Id. In making this finding, the Supreme Court noted that the call provided no predictive information and thus, left the officers without a way to test the caller's knowledge and credibility. Id. at 271. Additionally, it was found that an accurate description of appearance and location alone is insufficient information to establish reasonable suspicion, as it does not "show that the tipster has knowledge of concealed criminal activity." Id. at 272.

The facts in this case are distinguishable from the facts of J.L. In this instance, Officer Walsh did not institute the stop and frisk instantly upon identifying the Defendant. Instead, Officer Walsh was engaging in casual conversation on the sidewalk outside of the bar with those around Defendant as Officer Walsh waited on backup. At this time, Officer Walsh had the opportunity to view Defendant and his demeanor towards the Officer, without directly interacting with the Defendant. Once Officer Walsh's backup arrived, Officer Walsh revealed to Defendant that he was actually there because of Defendant, as the Police Department had received a call accusing Defendant of carrying a concealed firearm. Officer Walsh then asked whether Defendant had a gun, to which Defendant responded that he did not, but acknowledged that he was a convicted felon. After having this initial conversation with Defendant, Officer Walsh asked if Defendant could open up his bag to show the Officers that he did not have a gun. Based on the evidence, it appears that Defendant was voluntarily complying with this request only to open the bag.

While Defendant argues that this initial interaction was in some way a Terry stop, the

9

Court finds that such an interaction does not rise to the level of a Terry stop. Case law makes clear, that so long as an encounter with police officers remains consensual, reasonable suspicion is not required. Thus, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). Instead, " '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.' " Id. (quoting Terry, 392 U.S. at 19, n.16).

In view of the circumstances of this case, the time between Officer Walsh approaching the bar and the start of his initial questioning was clearly consensual in nature. Officer Walsh did not tell Defendant that he could not leave or that Defendant had to respond to his questions. Officer Walsh did not raise his voice in speaking with Defendant, but instead, Officer Walsh spoke to Defendant in a relaxed non-threatening manner. Additionally, Officer Walsh did not make any accusations towards Defendant. Officer Walsh merely restated what the anonymous caller had told police. Furthermore, rather than conducting a frisk of the bag, Officer Walsh initially only asked Defendant to show him the inside of the bag and Defendant appeared to have been voluntarily complying with this request. Accordingly, this initial part of the encounter was nothing but consensual in nature. It was not until the Officer took control over Defendant's bag, that the encounter crossed the line into what may be seen as a non-consensual seizure.

However, by the time the interaction was no longer consensual in nature, Officer Walsh had developed reasonable suspicion to suspect that Defendant was in fact carrying a gun in his

bag. Unlike in J.L., this reasonable suspicion was based on more than just the anonymous tip. First, Officer Walsh testified that based on Defendant's nervous behavior, he felt that Defendant could be hiding a gun in his bag. In viewing the body camera footage, it is clear that Defendant was acting nervous and avoiding eye contact and any interaction with Officer Walsh. Such nervous behavior may be taken into account by officers when making a reasonable suspicion determination. United States v. Singleton, 360 Fed. App'x 444, 445 (4th Cir. 2010) (citing United States v. Branch, 537 F.3d 328, 338 (4th Cir. 2008)). Second, Officer Walsh knew that Defendant was a convicted felon based on not only the anonymous tip, but also based on his own research that he conducted before arriving at the bar. Information concerning a defendant's past criminal record may be taken into account when making a reasonable suspicion determination. See United States v. Perkins, 363 F.3d 317, 332 (4th Cir. 2004) (stating that a prior criminal record, while standing alone is insufficient to establish probable cause, may be taken into account when considering other concrete factors in the reasonable suspicion analysis). Third, the anonymous tip was more comprehensive than that provided by the caller in J.L. In J.L., it appears that the caller only provided a basic description of the individual and stated that the individual possessed a gun. In this instance, the caller provided a description of the Defendant, in conjunction with providing Defendant's name, date of birth, and providing that Defendant was a convicted felon. Accordingly, taking all of these factors into account, Officer Walsh possessed the necessary reasonable suspicion required for his actions.

The Government's argument that Officer Walsh's initial examination of the bag, including Officer Walsh's act of picking the bag up to feel its weight, provided probable cause

11

<mark>Case 1:15-cr-00099-JAB   Document 17   Filed 05/13/15   Page 11 of 13</mark>

for the physical search of the bag, is an unnecessary step for this Court to consider in its analysis of the lawfulness of the search. Instead, the brief search of the bag was valid based on Officer Walsh's reasonable suspicion alone. See United States v. Smith, 994 F. Supp. 2d 758, 768 (E.D. Va. 2013), aff'd 582 Fed. App'x 196. In Smith, the district court found that the search of a suspect's bag based only on reasonable suspicion was lawful. Id. In so finding, the court stated that a frisk was not always required. Id. Instead, the question of whether the chosen method of either frisking or searching was appropriate, depended on what was reasonable under the circumstances so as to ensure the safety of the officers and the public. Id. As the officers in Smith believed a gun was located in the bag of a suspect, the court found that allowing the suspect to "to reenter the public realm with what the officers suspected was a weapon was neither a reasonable nor prudent course of action." Id.

Such a finding is in agreement with what the Supreme Court stated in Terry concerning reasonable searches. 392 U.S. 1. Specifically, the Supreme Court did not limit its evaluation of what was allowable based on reasonable suspicion to only frisks. Id. Rather, the Supreme Court spoke in terms of what constituted a reasonable search, stating that,

> there must be a narrowly drawn authority to permit a *reasonable search* for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.

Id. at 26 (emphasis added).

Accordingly, based on the circumstances in this case, Officer Walsh was not limited to just touching the outside of the bag and picking up the bag. Instead, based on his reasonable suspicion, Office Walsh could not only frisk the outside of the bag but he could also conduct

a search of the bag. Officer Walsh believed that a firearm was inside of the bag, which generated a concern for his personal safety. The Officer's concern for public safety was also relevant given that the encounter occurred on a public sidewalk on a busy street where numerous bars and restaurants are located. Additionally, it appeared from the body camera footage that many other people were around during the encounter that evening. For his own safety, and the safety of those around him, it would not have been prudent of Officer Walsh to allow Defendant to maintain control of the bag that the Officer had sufficient reason to believe contained a firearm. Accordingly, based upon the totality of the circumstances present before the Officer, the Court finds that the Officer's search of the bag was reasonable and supported by sufficient reasonable suspicion.

III.  CONCLUSION

In sum, while the Court does not find that Defendant consented to the search of the bag, the Court does find that Officer Walsh possessed the requisite reasonable suspicion to conduct the search of the bag held by Defendant.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress [Doc. #15] is DENIED.

This the 13th day of May, 2015.

_____
United States District Judge